**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.:  5:20-cv-02274** |
| **AMBASSADOR ADVISORS, LLC, BERNARD I. BOSTWICK, ROBERT E. KAUFFMAN, and ADRIAN E. YOUNG,** | **Jury Trial Demanded** |
| **Defendants.** | |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows against defendants Ambassador Advisors, LLC ("Ambassador Advisors"), Bernard I. Bostwick ("Bostwick"), Robert E. Kauffman ("Kauffman"), and Adrian E. Young ("Young") (collectively, "Defendants"):

## SUMMARY OF THE ACTION

1. From at least August 15, 2014, through December 2018 (the "Relevant Period"), Ambassador Advisors—an investment adviser registered with the Commission—and Bostwick, Kauffman, and Young—part owners, executives, and investment adviser representatives of Ambassador Advisors—unlawfully invested their advisory clients in mutual fund share classes with 12b-1 fees when lower-cost mutual fund share classes were available to the clients.

2. As investment advisers, Ambassador Advisors, Bostwick, Kauffman, and Young owed their advisory clients a fiduciary duty to act in their clients' best interests. Defendants' fiduciary duty included their obligation to seek best execution of clients' transactions, and to

fully disclose all material facts about the advisory relationship, including those relating to conflicts of interest that might cause them to put their own interests before their clients' interests.

3.      Nevertheless, Defendants invested their advisory clients in mutual fund share classes that charged 12b-1 fees when lower-cost share classes of the same funds were available to the clients.  As a result, clients received a lower return on their investment, and Bostwick, Kauffman, and Young received additional compensation in the form of 12b-1 fee revenue. Defendants violated their duty to seek best execution for clients' mutual fund transactions by causing certain clients to invest in fund share classes that charged 12b-1 fees when share classes of the same funds were available to the clients that presented a more favorable value under the particular circumstances in place at the time of the transactions.

4.      Defendants also violated their fiduciary duty by failing adequately to disclose to their clients the conflict of interest inherent in these transactions.  Specifically, Defendants did not disclose that, even though share classes of mutual funds without 12b-1 fees were available to their advisory clients, Defendants would select share classes of the same mutual funds with ongoing 12b-1 fees, lowering clients' returns and generating additional revenue for Bostwick, Kauffman, and Young.

5.      By failing to seek best execution of the mutual fund trades and failing to disclose their conflicts of interest, Bostwick, Kauffman, and Young enriched themselves at the expense of their clients and without their clients' knowledge.  In addition, Ambassador Advisors failed to adopt and implement written policies and procedures reasonably designed to make mutual fund share class recommendations in clients' best interests and to disclose Defendants' conflicts of interest in connection with mutual fund share class selection.

6.      As a result of the conduct described in this Complaint, Defendants violated, and unless enjoined will continue to violate, Section 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(2)], and Ambassador Advisors violated, and unless enjoined will continue to violate, Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-7 thereunder [17 C.F.R. § 275.206(4)-7].

## JURISDICTION AND VENUE

7.      The Commission brings this action pursuant to Sections 209(d) and 209(e) of the Advisers Act [15 U.S.C. §§ 80b-9(d) and (e)] to enjoin such transactions, acts, practices, or courses of business and to obtain disgorgement of all ill-gotten gains, prejudgment interest, and civil penalties.  The Commission further seeks any other relief as the Court may deem just and appropriate pursuant to Section 21(d)(5) of the Securities Exchange Act of 1934 [15 U.S.C. § 78u(d)(5)].

8.      This Court has jurisdiction over this action pursuant to Sections 209(d), 209(e), and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e), and 80b-14].

9.      Venue in this District is proper pursuant to Section 214 of the Advisers Act [15 U.S.C. § 80b-14].  Among other things, certain of the acts, transactions or practices constituting the violations of the federal securities laws alleged herein occurred within the Eastern District of Pennsylvania, and because Ambassador, Bostwick, Kauffman, and Young are inhabitants of, and/or transact business in, the Eastern District of Pennsylvania.

## THE DEFENDANTS

10.      Ambassador Advisors, LLC is a Pennsylvania limited liability company based in Lancaster, Pennsylvania.  Ambassador Advisors has been registered with the Commission as an investment adviser since 2002.  From 2014 through 2018, Ambassador Advisors reported that it

had regulatory assets under management ranging from approximately $270.6 million to $489.6

million, and that it advised between approximately 2,600 and 4,300 client accounts, mostly

belonging to individuals.

11.     Bernard I. Bostwick, age 58, is a resident of Lancaster, Pennsylvania and

President of Ambassador Advisors.  He has been an investment adviser representative of

Ambassador since at least 2011, and was Executive Vice President of Ambassador Advisors until

2019.  In addition, since 2011, Bostwick has been a registered representative of Broker A, a

registered broker-dealer based in Holbrook, New York.  Bostwick owns 50% of Ambassador

Advisors, and owned one third of Ambassador Advisors during the Relevant Period.  He

received between 24% and 29% of the 12b-1 fee revenue derived from mutual fund investments

in Ambassador Advisors client accounts during the Relevant Period.

12.     Robert E. Kauffman, age 65, is a resident of Tampa, Florida.  During the Relevant

Period, Kauffman resided in Mount Joy, Pennsylvania.  Kauffman founded Ambassador

Advisors, served as President of Ambassador Advisors during the Relevant Period, and owned

one third of Ambassador Advisors during the Relevant Period.  He has been an investment

adviser representative of Ambassador Advisors and a registered representative of Broker A since

at least 2011.  Kauffman received between 42% and 52% of the 12b-1 fee revenue derived from

mutual fund investments in Ambassador Advisors client accounts during the Relevant Period.

13.     Adrian E. Young, age 43, is a resident of Lititz, Pennsylvania.  Young has been

Executive Vice President, Chief Compliance Officer, and an investment adviser representative of

Ambassador Advisors since at least 2011.  He also has been a registered representative of Broker

A since 2011.  Young owns 50% of Ambassador Advisors, and owned one third of Ambassador

Advisors during the Relevant Period.  He received between 24% and 29% of the 12b-1 fee

revenue derived from mutual fund investments in Ambassador Advisors client accounts during the Relevant Period.

## FACTS

### Defendants' Advisory Services

14.     During the Relevant Period, Ambassador Advisors offered asset management services to its advisory clients, most of whom were individuals.  Ambassador Advisors had discretionary authority over client accounts and charged clients advisory fees based on a percentage of assets under management.  These advisory fees were periodically deducted from clients' advisory accounts.

15.     Because Ambassador Advisors had discretionary authority over its advisory accounts, Defendants regularly made and executed investment decisions on behalf of their advisory clients without prior notification or approval.

16.     Bostwick, Kauffman, and Young, as joint owners of Ambassador Advisors and executives of the firm, shared responsibility for managing the firm's business.

17.     Bostwick, Kauffman, and Young each served as investment adviser representatives of Ambassador Advisors and managed advisory accounts for persons or entities that they had signed on as clients.

18.     Bostwick, Kauffman, and Young served on the investment committee of Ambassador Advisors, which met periodically in order to decide what investments to buy, sell, or hold on behalf of advisory clients.

19.     From 2014 through 2018, Ambassador Advisors disclosed in its Form ADV Part 2A brochure that "[w]e offer discretionary portfolio management services," and "[o]nce the

portfolio is constructed, we provide continuous supervision and re-optimization of the portfolio as changes in market conditions and your circumstances may require."

20.     During the Relevant Period, Ambassador Advisors' Compliance Manual recognized that the firm and certain of its personnel, including Bostwick, Kauffman, and Young, were "fiduciaries."  The Compliance Manual stated that Ambassador Advisors personnel involved in making securities recommendations to advisory clients "must scrupulously avoid serving their own personal interests ahead of the Company's Advisory Clients," and "[a]s fiduciaries," they "must at all times" "[p]lace the interests of Advisory Clients first."

### Mutual Fund Share Classes and Rule 12b-1 Fees

21.     Among other investment products, Defendants invested their advisory clients in mutual funds.  Mutual funds are common investments for individuals.  A mutual fund pools money from many investors and invests the money in securities or other assets.  Mutual funds frequently offer investors different "share classes."  Each class represents an interest in the same "pool" (or investment portfolio) of securities and other assets, but each class will have a different fee and expense structure and, therefore, different net investment returns for the investor.

22.     A single mutual fund will often have share classes with different expense ratios, with the share classes that have higher total annual fund operating expenses generally having lower returns than share classes with lower total annual fund operating expenses.  In other words, an individual investor may pay more, or less, for precisely the same mutual fund investment, depending on the share class.  Fees and expenses are an important consideration in selecting a mutual fund share class because these charges lower an investor's returns.

23.     Some mutual fund share classes offered to retail investment clients charge fees pursuant to Rule 12b-1 under the Investment Company Act of 1940 to cover fund distribution

and sometimes certain shareholder services.  The 12b-1 fees are charged throughout the life of

the mutual fund investment and are deducted on an ongoing basis from the mutual fund's assets.

Mutual funds pay these fees to the fund's distributor or principal underwriter, which generally

remits the 12b-1 fees to the broker-dealer that distributes or sells the shares.

24.     Many mutual funds also offer other share classes that do not carry 12b-1 fees

("Non-12b-1 Shares").  Such Non-12b-1 Shares are frequently available to retail clients of

investment advisers such as Ambassador Advisors.  The terms and eligibility requirements for

any particular share class are described in a mutual fund's prospectus.  Non-12b-1 Shares do not

remit an ongoing distribution fee to the broker.  Therefore, Non-12b-1 Shares of a fund typically

have lower total annual fund operating expenses than the same fund's share classes that carry

12b-1 fees.  As a consequence, investors who hold Non-12b-1 Shares typically earn higher

returns over time than investors who hold shares of the same fund that carry 12b-1 fees.  If a

mutual fund offers Non-12b-1 Shares, and the investor is eligible to own them, it generally is in

the investor's interest to purchase or hold the Non-12b-1 Shares.

### Defendants' Mutual Fund Investment Management Practices

25.     Bostwick, Kauffman, and Young received 12b-1 fee revenue as a result of mutual

fund investments in Ambassador Advisors client accounts.  As owners of Ambassador Advisors

and registered representatives of Broker A, Bostwick, Kauffman, and Young entered into an

agreement with Broker A to receive 95% of the 12b-1 fee revenue derived from Ambassador

Advisors client accounts' mutual fund investments.  Periodically, Bostwick, Kauffman, and

Young instructed Broker A how to divide up the 12b-1 fee revenue amongst the three of them,

and, on multiple occasions signed documents reflecting such divisions.

26.     During the Relevant Period, Kauffman's share ranged from 42% to 52% of the 12b-1 fee revenue that Broker A would pass along, with Bostwick and Young sharing the remainder, ranging from 24% to 29% each.  Typically on a weekly basis, Broker A paid Bostwick, Kauffman, and Young his respective percentage of the 12b-1 fee revenue derived from Ambassador Advisors client accounts' mutual fund investments.

27.     Bostwick, Kauffman, and Young also received compensation derived from Ambassador Advisors' advisory fee revenue in the form of a salary as well as profit distributions tied to their ownership of the firm.

28.     The investment committee of Ambassador Advisors, on which Bostwick, Kauffman, and Young served, made mutual fund investment selections on behalf the firm's advisory clients.  During the Relevant Period, once the investment committee selected a particular mutual fund on behalf of advisory clients, Defendants' practice was to purchase on behalf of advisory clients a mutual fund share class that paid 12b-1 fees, regardless of whether Non-12b-1 Shares were available to the clients.

29.     On numerous occasions during the Relevant Period, Defendants invested advisory clients in a mutual fund share class that paid 12b-1 fees even though Non-12b-1 Shares were available to the clients.  Broker A paid ongoing 12b-1 fee revenue derived from these investments to Bostwick, Kauffman, and Young.

30.     For example, beginning in May 2015, Defendants invested advisory clients in American Century Emerging Markets Fund Class A shares (ticker: AEMMX), which had a 12b-1 fee of 25 basis points, when clients could have been placed in Non-12b-1 Shares.  Clients could have been placed in the fund's Investor Class (ticker: TWMIX), which had no 12b-1 fee, a lower-expense ratio, and no associated ticket charges.  Nevertheless, Bostwick, Kauffman, and

Young received over $30,000 in 12b-1 fee revenue by placing clients in Class A shares of this fund in 2015, 2016, and part of 2017.

31.     Similarly, beginning in April 2016, Defendants invested advisory clients in Clearbridge Large Cap Growth Fund Class A shares (ticker: SBLGX), which had a 12b-1 fee of 25 basis points, when clients could have been placed in Non-12b-1 Shares.  Clients could have been placed in the fund's Class I shares (ticker: SBLYX), which had no 12b-1 fee, a lower-expense ratio, and no associated ticket charges.  Nevertheless, Bostwick, Kauffman, and Young received over $25,000 in 12b-1 fee revenue by placing clients in Class A shares of this fund in 2016 and part of 2017.

32.     By way of further example, beginning on or about August 19, 2014, Defendants also harmed certain other advisory accounts by placing them in MFS Global Alternative Strategy Fund Class A shares (ticker:  DVRAX).  In connection with Defendants' purchases of this mutual fund share class, the advisory clients' incurred—and Bostwick, Kauffman, and Young received—over $60,000 in 12b-1 fees.  Unlike certain other mutual funds, the lower-cost share class available for this fund included ticket charges applicable to Defendants' advisory clients, which were administrative fees of typically $15 for each purchase or sale of the mutual fund share class by an advisory account.  Notwithstanding this, at least some of Defendants' advisory clients were harmed by paying 12b-1 fees in connection with their investments in MFS Global Alternative Strategy Fund Class A shares when a lower-cost share class without such fees was available.

33.     Furthermore, from time to time during the Relevant Period, on behalf of their clients, Defendants continued to hold mutual fund investments in share classes that paid 12b-1 fees, even though the clients were eligible to convert their mutual fund investments to Non-12b-1

shares.  Broker A paid ongoing 12b-1 fee revenue derived from these investments to Bostwick, Kauffman, and Young.

34.     As a result of their roles at Ambassador Advisors, their involvement in the investment selection process, and their service as investment adviser representatives that managed specific client accounts, Bostwick, Kauffman, and Young knew, were reckless in not knowing, or should have known, that their advisory clients were being invested in a mutual fund share class that paid 12b-1 fees even though Non-12b-1 Shares were available to the clients.

35.     In addition, Bostwick, Kauffman, and Young knew, were reckless in not knowing, or should have known, that they were receiving 12b-1 fee revenue derived from advisory clients' mutual fund investments, as a result of their entry into an agreement with Broker A to receive such revenue, their instructions to Broker A regarding how to share the revenue, and their receipt of such revenue in their bank accounts.

**Defendants Failed to Seek Best Execution**

36.     As investment advisers, Defendants are fiduciaries for their advisory clients. Because of that, Defendants had a fiduciary duty to their advisory clients to seek best execution, which means to execute securities transactions for clients in such a manner that the client's total costs or proceeds in each transaction are the most favorable under the circumstances.

37.     During the Relevant Period, by causing certain advisory clients to invest in fund share classes that charged 12b-1 fees when share classes of the same funds were available to the clients that presented a more favorable value under the particular circumstances in place at the time of the transactions, Defendants violated their duty to seek best execution for those transactions.  Moreover, Defendants failed to disclose to their clients that best execution would not be sought for purchases of mutual funds with multiple available share classes.

38.     By investing client assets in higher-cost share classes, Defendants were, at the very least, negligent.  Defendants failed to use ordinary care under the circumstances, failing to exercise the care that a reasonable investment adviser would use in executing transactions on behalf of their clients.

### Defendants Failed to Fully and Fairly Disclose Their 12b-1 Fee Conflicts

39.     As fiduciaries, Defendants owe their clients an affirmative duty of utmost good faith, are obligated to provide full and fair disclosure of all material facts, and have an affirmative obligation to employ reasonable care to avoid misleading their clients.  Defendants' duty to disclose all material facts includes a duty to tell clients about all actual or potential conflicts of interest that might incline Defendants to render investment advice that is not disinterested, and how those conflicts could affect the advice provided to their advisory clients.

40.     Defendants were required to provide their advisory clients with disclosure sufficiently specific for the clients to understand the conflicts of interest concerning Defendants' advice about their investments in different classes of mutual funds.  A fiduciary must act in its client's best interest.  If the fiduciary has a conflict of interest, the fiduciary must, at the very least, make full and fair disclosure to the client, and the client must provide informed consent to the conflict of interest as disclosed.

41.     Defendants' only disclosures to clients that mention "12b-1 fees" came in Commission-mandated disclosure forms for certain investment advisers.  These forms are known as Form ADV, and more specifically Form ADV Part 2.  Form ADV Part 2A is commonly referred to as an investment adviser's brochure and Form ADV Part 2B is commonly referred to as the brochure supplement.

42.     Investment advisers like Ambassador Advisors must file the brochure with the Commission and update it at least annually, and must provide their current brochure to advisory clients, and prospective clients, prior to or concurrent with the execution of the advisory agreement.  Brochures must include required disclosures about an investment adviser's business, including how the adviser is compensated.

43.     Defendants knew, were reckless in not knowing, or should have known, that they were required by law to disclose conflicts of interest to their advisory clients because, among other reasons, the instructions to Form ADV provided such guidance.

44.     Further, federal regulation, specifically 17 C.F.R. § 275.204-1, required Ambassador Advisors to file all amendments to its Part 2A brochure with the Commission through the online Investment Adviser Registration Depository.

45.     Ambassador Advisors filed with the Commission amended Form ADV Part 2A brochures dated March 12, 2014, February 13, 2015, March 10, 2016, March 24, 2017, and March 12, 2018, which stated the following:  "Persons providing investment advice on behalf of our firm are registered representatives with [Broker A], a securities broker/dealer registered with the [SEC and FINRA].  In their capacity as registered representatives, these persons may receive commission-based compensation in connection with the purchase and sale of securities, including 12b-1 fees for the sale of investment company products.  Compensation earned by these persons in their capacities as registered representatives is separate and in addition to our advisory fees.  This practice presents a conflict of interest because persons providing investment advice on behalf of our firm who are registered representatives have an incentive to effect securities transactions for the purpose of generating commissions rather than solely based on your needs."

46.     During the Relevant Period, the Form ADV Part 2B brochure supplements for Bostwick, Kauffman, and Young stated the following:  "Mr. [Bostwick/Kauffman/Young] is separately licensed as a Registered Representative of [Broker A], a securities broker/dealer registered with the [SEC and FINRA.  In this capacity, Mr. [Bostwick/Kauffman/Young] may recommend securities products offered by [Broker A] as part of his clients' investment portfolios.  If clients purchase these products through Mr. [Bostwick/Kauffman/Young], he will receive the customary commissions in his separate capacity as a registered representative of [Broker A].  Additionally, Mr. [Bostwick/Kauffman/Young] could be eligible to receive incentive awards that [Broker A] may offer.  He may also receive 12b-1 fees from mutual funds that pay such fees.  The receipt of additional compensation may give Mr. [Bostwick/Kauffman/Young] an incentive to recommend investment products based on the compensation received, rather than on your investment needs."

47.     Defendants' disclosures in the Form ADV Part 2A and Part 2B brochures did not adequately disclose the conflicts of interest inherent in their mutual fund share class selection practices.

48.     As set forth above, on numerous occasions, Defendants purchased, recommended, or held for their advisory clients mutual fund share classes that charged 12b-1 fees instead of lower-cost share classes of the same funds that were available to the clients.

49.     And yet, Defendants did not disclose to their advisory clients their practice of purchasing mutual fund shares classes that charged 12b-1 fees instead of lower-cost share classes available to clients.

50.     Defendants did not disclose to clients the amount of 12b-1 fee revenue that they received from their share class selection practice, nor even the fact that they had received—and continued to receive—12b-1 fee revenue from this practice.

51.     Defendants also failed to disclose to clients that investing, or remaining invested, in share classes that paid 12b-1 fees would generally reduce the overall return of such investments to the clients in comparison to Non-12b-1 share classes of the same mutual funds.

52.     Defendants breached their affirmative fiduciary duty to disclose conflicts of interest fully and fairly with sufficient specificity to their advisory clients in order for those clients to provide informed consent to the conflicts.

53.     There is a substantial likelihood that a reasonable advisory client would consider the omitted information as significant in order for clients to provide informed consent to the conflicts of interest.  There is a substantial likelihood that disclosure of the omitted information would have been viewed by a reasonable advisory client as significantly altering the total mix of information made available.

54.     Further, Defendants knew, were reckless in not knowing, or should have known that they had a duty to disclose such information.  Yet, Defendants failed to provide full and fair disclosure of all material facts and to employ reasonable case to avoid misleading their clients.

**Ambassador Advisors Failed to Adopt and Implement Written Policies and Procedures Reasonably Designed to Prevent Violations of the Advisers Act**

55.     Pursuant to Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-7 Act [17 C.F.R. § 275.206(4)-7] thereunder, Ambassador Advisors was required to adopt and implement written policies and procedures reasonably designed to prevent violation of the Advisers Act by it and its supervised persons.

56.     Ambassador Advisors' operative policies and procedures during the Relevant Period simply required that personnel "must scrupulously avoid serving their own personal interests ahead of the Company's Advisory Clients," and "[a]s fiduciaries," they "must at all times" "[p]lace the interests of Advisory Clients first."

57.     Ambassador Advisor's then-operative policies and procedures did not have a policy or procedure to ensure that Defendants were seeking best execution on behalf of their advisory clients.

58.     Ambassador Advisor's then-operative policies and procedures also did not have a policy or procedure to ensure Defendants' full and fair disclosure of all conflicts of interest that might lead the firm or its supervised persons to give investment advice that is not disinterested.

59.     During the Relevant Period, Ambassador Advisors did not adopt or implement written policies and procedures reasonably designed to ensure that Ambassador Advisors and its supervised persons—as they were legally required to do—sought best execution for clients' mutual fund transactions.

60.     Nor, during the Relevant Period, did Ambassador Advisors adopt or implement written policies and procedures reasonably designed to ensure that Ambassador Advisors and its supervised persons—as they were legally required to do—fully and fairly disclosed all conflicts of interest.

61.     Moreover, at times during the Relevant Period, many of Defendants' advisory client accounts had a majority of assets in mutual funds, and Ambassador Advisors' business practices included a steady stream of 12b-1 fees generated from advisory clients' investments being paid to its principals.

62.     Ambassador Advisors did not have a written policy concerning its mutual fund share selection practices.  Ambassador Advisors did not tailor its policies and procedures to the firm's business by taking account of its business practice of investing in mutual funds.

63.     Without an Ambassador Advisors written policy and procedure on best execution and mutual fund share class selection, defendants Bostwick, Kauffman, and Young had an unwritten practice of routinely selecting mutual fund share classes with 12b-1 fees even where lower-cost Non-12b-1 Shares were available, and thus generating significant revenue for themselves.

64.     Ambassador Advisors did not adopt and implement written policies and procedures reasonably designed to identify or disclose the conflicts of interest caused by Defendants' mutual fund practices.

**Defendants Violated the Federal Securities Laws**

65.     Ambassador Advisors, Bostwick, Kauffman, and Young are "investment advisers" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)] because, for compensation, they engage, and engaged during the Relevant Period, in the business of advising others with respect to investing in, purchasing, or selling securities.

66.     Ambassadors Advisors is, and was during the Relevant Period, registered with the Commission as an investment adviser, and Ambassador Advisors, Bostwick, Kauffman, and Young, each is, and was during the Relevant Period, in the business of providing investment advice concerning securities for compensation.

67.     Bostwick, Kauffman, and Young owned, managed, and controlled Ambassador Advisors, served as investment adviser representatives for advisory clients, and were on the investment committee that selected mutual fund investments for advisory clients.

68.     As investment advisers, Defendants owe, and owed during the Relevant Period, a fiduciary duty to their advisory clients.

69.     Among other things, Defendants owe, and owed during the Relevant Period, their clients:  (1) a duty to seek best execution for transactions they execute on behalf of their clients; and (2) a duty to disclose all material facts, including conflicts of interest.

70.     Defendants violated the fiduciary duty they owe to their advisory clients by:  (1) causing certain advisory clients to invest in fund share classes that charged 12b-1 fees when share classes of the same funds were available to the clients that presented a more favorable value under the particular circumstances in place at the time of the transactions, thus failing to seek best execution; and (2) failing to disclose to their advisory clients that Defendants engaged in the practice of selecting mutual fund share classes with 12b-1 fees, although cheaper Non-12b-1 Shares of the same mutual funds were available and, as a result of this practice, Bostwick, Kauffman, and Young would receive most of the 12b-1 fees paid by the advisory clients.

71.     Defendants knowingly, recklessly, or negligently failed to seek best execution by purchasing for their clients mutual fund share classes with 12b-1 fees when such fees were avoidable through the purchase of lower-cost Non-12b-1 Shares.

72.     Defendants knowingly, recklessly, or negligently failed to disclose to their advisory clients that Defendants engaged in the practice of selecting mutual fund share classes with 12b-1 fees, although cheaper Non-12b-1 Shares of the same mutual funds were available and, as a result of this practice, Bostwick, Kauffman, and Young would receive most of the 12b-1 fees paid by the advisory clients.

73.     There is a substantial likelihood that a reasonable advisory client would consider the omitted information as significant in order for clients to provide informed consent to the

conflicts of interest.  There is a substantial likelihood that disclosure of the omitted information would have been viewed by a reasonable advisory client as significantly altering the total mix of information made available.

74.     Defendant Ambassador Advisors failed to have written policies and procedures reasonably designed to prevent violations, by the investment adviser and its supervised persons, of the Advisers Act and its rules, given its failure to have policies and procedures concerning: (1) best execution; (2) disclosure of conflicts of interest; and (3) mutual fund share class selection practices.

75.     Defendant Ambassador Advisors knowingly, recklessly, or negligently failed to have written policies and procedures reasonably designed to prevent violations, by the investment adviser and its supervised persons, of the Advisers Act and its rules.

76.     In connection with the conduct described herein, Defendants used the mails or any means or instrumentality of interstate commerce.

77.     Defendants have not reimbursed advisory clients harmed by the practices alleged herein.

## **TOLLING OF STATUTE OF LIMITATIONS**

78.     Ambassador and Kauffman agreed to toll any statute of limitations applicable to the claims alleged herein during the period from April 24, 2019 through January 24, 2020.

79.     Young agreed to toll any statute of limitations applicable to the claims alleged herein during the period from December 3, 2019 through January 24, 2020.

80.     Bostwick agreed to toll any statute of limitations applicable to the claims alleged herein during the period from December 5, 2019 through January 24, 2020.

## CLAIMS FOR RELIEF

### FIRST CLAIM
### Violation of Section 206(2) of the Advisers Act
### (Against All Defendants)

81.     The Commission realleges and incorporates by reference each and every

allegation in paragraphs 1 through 80 of the Complaint, inclusive, as if they were fully set forth

herein.

82.     Ambassador Advisors, Bostwick, Kauffman, and Young are investment advisers

as defined by Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

83.     By engaging in the conduct described above, Defendants, directly or indirectly, by

use of the mails or means and instrumentalities of interstate commerce, while acting as

investment advisers, knowingly, recklessly, or negligently engaged in transactions, practices, or

courses of business which operated as a fraud or deceit upon clients or prospective clients.

84.     By reason of the foregoing, Ambassador Advisors, Bostwick, Kauffman, and

Young violated and, unless restrained and enjoined, will continue to violate, Section 206(2) of

the Advisers Act [15 U.S.C. § 80b-6(2)].

### SECOND CLAIM
### Violation of Section 206(4) of the Advisers Act and Rule 206(4)-7 thereunder
### (Against Ambassador Advisors)

85.     The Commission realleges and incorporates by reference each and every

allegation in paragraphs 1 through 84 of the Complaint, inclusive, as if they were fully set forth

herein.

86.     Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] provides that it is

unlawful for an investment adviser to engage in an act, practice, or course of business which is

fraudulent, deceptive, or manipulative.  It further states that the Commission shall issue rules to

19

define and prescribe measures to prevent such misconduct.  Rule 206(4)-7 under the Advisers

Act [17 C.F.R. § 275.206(4)-7] requires, among other things, that investment advisers registered

with the Commission adopt and implement written policies and procedures reasonably designed

to prevent violations, by the investment adviser and its supervised persons, of the Advisers Act

and its rules.  Such investment advisers must also review the adequacy of those policies and

procedures and the effectiveness of their implementation, at least annually.

87.     Ambassador Advisors failed to adopt and implement written policies and

procedures reasonably designed to prevent the Defendants' breaches of fiduciary duty arising

from their mutual fund share class selection and disclosure practices.

88.     By reason of the foregoing, Ambassador Advisors, directly or indirectly, violated

and, unless restrained and enjoined, will continue to violate, Section 206(4) of the Advisers Act

[15 U.S.C. § 80b-6(4)] and Rule 206(4)-7 thereunder [17 C.F.R. § 275.206(4)-7].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final

judgment:

## I.

Permanently restraining and enjoining Ambassador Advisors from, directly or indirectly,

violating Sections 206(2) and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(2), 80b-6(4)] and

Rule 206(4)-7 thereunder [17 C.F.R. § 275.206(4)-7], and Bostwick, Kauffman, and Young

from, directly or indirectly, violating Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)];

## II.

Ordering defendants Bostwick, Kauffman, and Young to disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

## III.

Ordering Defendants to pay civil penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and

## IV.

Granting such other and further relief as this Court may determine to be just, equitable, and appropriate.

Dated:  May 13, 2020

Respectfully submitted,

Christopher R. Kelly
Jennifer Chun Barry
Oreste P. McClung
Brendan P. McGlynn

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone:  (215) 597-3100